## Sheeler Estate

*John W. Forry*, for accountant.

MARX, P. J., January 5, 1957.—Ellen Sheeler died on January 10, 1956, testate and not married. Her will, dated March 17, 1954, was admitted to probate in the office of the Register of Wills of Berks County

on January 18, 1956, whereupon letters testamentary were issued to this accountant, executrix in said will named. She caused a schedule of personal property to be filed on February 1, 1956, amounting to $5,736.20, and real estate of $5,100.

The testamentary disposition under item 2 of the will presents a question requiring consideration and the determination of liability for transfer inheritance tax. The item reads: "I give, devise and bequeath unto my daughter, Pearl Haas, and to Charles Haas, her husband, the house and tract of land upon which the same is erected, which I now occupy in Stony Creek Mills, in the development known as 'Reading Gardens', Lower Alsace Township, Berks County, Pennsylvania, together with all the furniture and household equipment belonging to me in the aforesaid premises."

The described premises were appraised $5,100 and the furniture and household equipment of testatrix was appraised $50.75. The account includes a credit taken for the payment of inheritance tax, $152. The computation in settlement of said transfer tax on the real estate and on the furniture and fixtures is not available, but the amount of tax on said premises and the furniture and fixtures must be determined under the circumstances attaching to the gift. There was placed in evidence a written renunciation of the testamentary gift to Pearl Haas and her husband Charles Haas. Unquestionably the beneficiaries took an estate by entireties. The renunciation, dated April 10, 1956, reciting the gift, concludes: "Now Know All Men by These Presents, that I, Charles Haas, the Devisee named in the above quoted Will, do hereby waive, relinquish, renounce and reject the gift, devise and bequest made to me as aforesaid, under the above quoted Last Will and Testament".

Testatrix died on January 10, 1956. The estate of the named beneficiaries vested as of that date. The

statute imposing liability for transfer tax, in existence at that time, determined the liability of the testamentary gift and the amount due thereunder. The amending Act of December 21, 1951, imposes no specific tax liability upon an estate held by entireties. It imposes a tax at two percent of the clear value of the property passing to or for the use of father, mother, husband, wife, children, lineal descendants born in lawful wedlock, legally adopted children, children of a former husband or wife, or the wife or widow of the son, of a person dying seized or possessed thereof, and also on the clear value of such property passing from the mother of an illegitimate child, or from any person of whom the mother is a lineal descendant, to such child, his wife, or widow, and passing from an illegitimate child to his mother. A tax, at the rate of 15 percent upon the clear value of the property subject to such tax passing to or for the use of any other person or persons, bodies corporate or politic, is added and imposed upon the transfer to the person or persons and bodies named in such further provisions. It would appear the latter provision is applicable here. In a dissenting opinion in Zipperlein Estate, 367 Pa. 622, at 625, Mr. Justice Bell had in mind a situation such as arises here. He said: "Tax acts sometimes contain provisions which are inequitable, unjust, illogical and irritating. The fact that this construction will produce inequity in the instant case is no justification for ignoring the language of the Act or nullifying our prior decisions with respect to 'tenancies by the entireties'.

"This bequest—not being to a person or persons who are designated as subject to a 2% tax—clearly and necessarily falls within the provision of the Act that subjects all other testamentary gifts to taxation at the 10% rate (now 15%); and hence at said rate it must be taxed."

In the majority opinion in that case the Supreme Court, by Mr. Justice Horace Stern, said: "It is well established that where an estate is held by the entireties the husband and the wife do not each own a one-half share or any divisible part of the property, but both own the whole of it; each is seized *per tout et non per my*: . . . But in considering, from a practical standpoint, the question as to the proper tax to be imposed under the 1919 Act, the stepson and his wife must be regarded as each having a one-half interest in the bequest, with the result that the tax on his half share will be at the rate of 2% and the tax on her half share at the rate of 10%.

"It has been suggested that the stepson's wife could renounce her interest in the gift, thereby leaving the bequest to devolve entirely upon the stepson and thus bringing it wholly within the 2% group, and thereafter the stepson could re-create with his wife a tenancy by the entireties—an idea derived from the decision in Bute Estate, 355 Pa. 170. . . . There it was held that, when a beneficiary renounces his legacy, he is absolved from any obligation to pay a transfer inheritance tax thereon and the succession becomes taxable only in accordance with the ultimate devolution of the property. In that case, however, the renunciation of the legacy was bona fide and not a part of any palpably evasive scheme such as that here suggested; moreover, the stepson's wife in the present case has not in fact disclaimed her interest in the bequest.

"The decree of the court below is reversed and the record is remanded with direction to decree that the bequest is subject to the 2% tax on half thereof and to the 10% tax on the other half thereof. . . ."

In Runco v. Ostroski, 361 Pa. 593, the Supreme Court, by Mr. Justice Linn, said: "Our cases show that the rigidity of the common law concept of tenancy by

the entireties has yielded to the demands of modern life. . . . 'After her voluntary deed Eleanor retained no interest in the premises whatsoever. Divorce does not, it is true, destroy an estate by the entireties . . . but the estate may be ended by voluntary partition, even during the continuance of the marriage relationship. . . .

" 'Nor can there be any valid objection to the means employed to effect the amicable partition in the present case. The ordinary method of effecting a voluntary partition is by the mutual exchange of individual deeds: . . . As a matter of fact, a parole partition would have been valid, . . . It follows that the clear intention of the parties was duly effected; conveyance to a third party and reconveyance by him was unnecessary. Nor was it required that both husband and wife join as grantors in the deeds that were exchanged.' . . . 'It is part of the fundamental principle of the estate that neither can alien so far as to bind the other. Each has a right to the whole which cannot be taken away by a severance and limitation to a part. But this is wholly different from a partition by deed or by parole with mutual consent.' "

The court held that the husband's deed operated, under the circumstances, to terminate the estate by the entireties, with the result that the judgment for plaintiff entered by the court below was erroneous.

In Bute Estate, 355 Pa. 170, the Supreme Court, by Mr. Justice Allen M. Stearne, considered the question: ". . . may a transfer inheritance tax be assessed against a testamentary beneficiary where the bequest is renounced? . . ." The court below answered in the negative. The Commonwealth appealed. The argument on appeal was rested on the decision in Paul's Estate, 1 D. & C. 231. In that case testatrix bequeathed a legacy to a son-in-law which he renounced. It was there decided that a collateral inheritance tax was due upon the

renounced legacy. The decision was written by Judge Gest of the Orphans' Court of Philadelphia. The basis for Judge Gest's decision was that: ". . . title to the bequeathed property passed by the will *eo instanti* upon testatrix's death; that a renunciation presupposes that a legatee 'has something to renounce', hence the renunciation acted, by analogy, to an assignment or transfer of the legatee's interest, and, as the tax was affixed when the legatee received title, the tax liability of the legatee, and lien, were not divested by the renunciation. . . ."

Judge Matthews, the hearing judge in Bute Estate, wrote: ". . . 'No person can be compelled to accept a gift against his will. The Commonwealth concedes this principle of law for every purpose except that of taxation'. . . . ."

Affirming the decision of Judge Matthews in the instant case, the Supreme Court wrote: ". . . If a person is not compelled to accept a bequest or inheritance against his will, and is permitted to renounce it, it is legal sophistry to suppose that such a share first vests, then is divested, by assignment back to the estate, releasing in some undisclosed manner the personal liability of the renouncing distributee, but still retaining the tax liability upon the estate being distributed. . . . under the foregoing authorities, we decide that when the beneficiary renounces his legacy he is absolved from any obligation to pay an inheritance tax thereon and the succession becomes taxable only in accordance with the ultimate devolution of the property.

". . . Because the daughter's husband renounced his interest as tenant by entirety, no such estate was ever erected, *but we need not consider the effect of this on the devise to the daughter who undoubetdly takes under the will or by intestacy*. In either event the tax is therefore properly assessed against her at 2%."

In keeping with the decision in Bute Estate, supra, we decide that, the beneficiary, Charles Haas, having renounced the devise and legacy under the second item of the will, ultimate devolution of the property there devised and bequeathed falls to the residuary devisee and legatee under the will of testatrix and the custody and possession of the real estate, and the personal estate, must be and are decreed, in distribution and ownership, to Pearl Haas, and we find the transfer subject to a tax to the Commonwealth of Pennsylvania at the rate of two percent of the fair value. . .